

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-5354
Re: Use of schoolhouse during
summer months by particu-
lar sect for purpose of
conducting school of re-
ligious instruction.

In your letter of June 2, 1943, you requested the opinion of this department upon the following question:

"Is it permissible for the school board of an Independent School District, and do they constitute the final authority to grant the right to a religious sect, who have their own church facilities in the community, the use of the public school buildings and property with or without cost to the religious group for a period of two months during the summer for the sole purpose of conducting a school of religious instruction under the strict supervision of their religious leaders?"

Title to property of an independent school district is by law vested in the board of trustees of the district, and the exclusive management and control of school property are also committed to such board. Trustees of Independent School District v. Johnson County Democratic Executive Committee, 122 Tex. 48, 52 S.W. (2d) 71. However, with respect to such ownership, management and control the board of trustees stands in the position of a trustee, and, as our Supreme

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable T. M. Trimble, Page 2

Court has said in Love v. City of Dallas, 40 S.W. (2d) 20, at p. 26:

> " . . . . it is plain, we think, that the
> property and funds of the public schools are
> held in trust by the city, district, county, or
> other statutory agency, to be used for the bene-
> fit of the school children of the community or
> district in which the properties exist, or to
> which the school funds have been allocated. We
> think these properties and funds are so plainly
> and clearly impressed with a trust in favor of
> the local public schools of the city or district
> that they are within the protective claims of
> both the state and federal Constitutions, and
> that the Legislature is without power to devote
> them to any other purpose or to the use of any
> other beneficiary or beneficiaries."

In connection with the administration of such trusts, our courts have recognized that the leasing of school property for non-school purposes may be in harmony with the purposes of the trust and may be consonant with the faithful performance of the trust provided the lease is made under conditions which prevent its interfering with the conduct of the school. Thus in Royse Independent School District v. Reinhardt, 159 S.W. 1010 (error refused), school property was leased to a "Booster Club" during the summer vacation for the purpose of allowing the Club to use such property as a site for baseball games for which an admission fee was charged. In return for the privi- lege of so using the property the Club undertook to erect a fence enclosing the entire school grounds, such fence to be- come the property of the school district, and to maintain the fence for a period of three years. In holding that the board of trustees was authorized to enter into this lease, the Court said at p. 1011:

> "The contract under consideration permits the
> use of the school grounds only during the period
> of time intervening between the close of the school
> in the spring and the beginning of the term in the
> following fall, and will result in quite a finan-
> cial advantage to the school district. It may be

Honorable T. M. Trimble, Page 3

true that the use to which the grounds will be
put under the contract is not actually neces-
sary for the promotion of the school, yet, as
it will not impede or interfere with its pro-
gress, or tend to injure the school property,
and will be used at a time when the grounds
are not needed and will not be used by the
school, such use is not so inconsistent with
the purposes to which the property has been
dedicated or set apart as renders the contract
permitting it illegal or unauthorized.  In oth-
er words, we think the contract between the
trustees of the Royse Independent school dis-
trict and the Royse Booster Club, whereby said
trustees lease to said club a portion of its
unused school campus for the purpose of play-
ing baseball thereon during vacation, in con-
sideration that the said club will erect and
maintain during the existence of the lease a
suitable fence inclosing the entire school cam-
pus and grounds, such fence to become the pro-
perty of the school district, the use of the
grounds being so restricted as not to permit
of injury to or waste of the school property,
or interference with the conduct of the school,
is not ultra vires or unauthorized."

This decision was followed by a former administration of this
department in an opinion written by Assistant Attorney Gener-
al W. M. Harris in which it was held that a school district
could lease an unused portion of a school building to a chap-
ter of the Woodmen of the World.  Report of the Attorney Gen-
eral, 1914-1916, p. 585.  Although not unanimous, courts in
other jurisdictions generally have reached the same result.
86 A. L. R. 1195; 24 Ruling Case Law § 34, p. 584.  See es-
pecially the citations and discussion in Merryman v. School
District, 43 Wyo. 376, 5 Pac. (2d) 267.  Implicit throughout
these decisions and explicit in much of their language is the
thought that an advantageous lease which does not interfere
with the conduct of the school is an indicia of prudent trust
management rather than of a breach of trust since such a lease
enables the school district to employ with benefit to itself
that which otherwise would have remained idle and unused.

Honorable T. M. Trimble, Page 4

However, the instant problem goes beyond a mere leasing of school property for non-school use since the contemplated use is for the teaching of sectarian doctrines by instructors of a particular religious group. Sections 6 and 7 of Article I of our Constitution read respectively as follows:

"Sec. 6. All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship.

"Sec. 7. No money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purposes."

Moreover, Section 5 of Article VII provides in part:

" . . . . And no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever; nor shall the same, or any part thereof ever be appropriated to or used for the support of any sectarian school; . . . ."

In Church v. Bullock, 109 S.W. 115, our Supreme Court said with reference to Section 5 of Article VII "it was the purpose of the Constitution to forbid the use of public funds for the support of any particular denomination of religious people, whether they be Christians or of other religions," and in the same case explained Section 6 of Article I as follows: "The primary purpose of that provision of the Constitution

Honorable T. M. Trimble, Page 5


was to prevent the Legislature from in any way compelling
the attendance of any person upon the worship of a particu-
lar church, or in any manner, by taxation or otherwise,
cause any citizen to contribute to the support of 'any place
of worship.'"

In South San Antonio Independent School District
v. Martine, 275 S.W. 265, a taxpayer sought an injunction
forbidding the use of a school building for "private, sec-
tarian, political or social purposes," alleging, inter alia,
that the board of trustees had allowed the building to be
used for "sectarian, political and religious purposes," that
they had allowed "a Sunday school class of the South San An-
tonio Baptist Church to have a 'box supper' in the school
building and that the funds arising from the enterprise were
used by the class for its own purposes," and that sundry
other uses had been made of the building by lodges and pri-
vate individuals.  The Court of Civil Appeals reversed a
lower court decree and denied the injunction on the ground
that the courts had no jurisdiction since the plaintiff had
neither utilized nor exhausted the administrative remedies
provided for real or fancied wrongs of the kind under consid-
eration.  In denying the application for writ of error, the
Supreme Court said (277 S.W. 78):

> "While we do not doubt the jurisdiction of the
> district court over a suit to prevent the impro-
> per use of school property, yet, since the peti-
> tion in this case failed to disclose an abuse of
> discretion on the part of the trustees such as
> to give a cause of action to a private citizen,
> we refuse the application for the writ of error."
> (Emphasis added)

While the underlined language does not reveal with
preciseness wherein and in what respect plaintiff's petition
failed to show a cause of action, yet the text-writers have
interpreted this decision to mean that "the Supreme Court has
held that the trustees may permit the use of buildings by
clubs and fraternal societies, musical organizations, Sunday-
schools, etc., where such uses do not interfere with their use
for school purposes," 37 Tex. Jur. 958, and the case has been
cited in an opinion by our present Chief Justice in support of

792

the proposition that "the courts have usually looked upon the matter from a common sense viewpoint, and as a result it is now generally recognized by the courts in Texas and elsewhere that a board of trustees under its general implied powers may lawfully permit the use of a school building for other purposes other than that of conducting a school therein, especially where it is a quasi-public purpose in which the public generally is interested, provided the primary use for educational purposes is not materially interfered with." Trustees of Independent School District v. Johnson County Democratic Executive Committee, 52 S.W. (2d) 68, reversed on other grounds 52 S.W. (2d) 71.

Apart from the possible pertinency of the San Antonio case, our courts have never considered the applicability of the above quoted constitutional provisions to the type of question here under consideration. Considerations of the question in other jurisdictions have lead to varying conclusions. Cases denying the right to lease school property to sectarian groups stem largely from the leading case of Spencer v. Joint School District, 15 Kans. 259, 22 Am. Rep. 268, wherein it was said:

"The public schoolhouse cannot be used for any private purposes. The argument is a short one. Taxation is invoked to raise funds to erect the building; but taxation is illegitimate to provide for any private purpose. Taxation will not lie to raise funds to build a place for a religious society, a political society, or a social club. What cannot be done directly cannot be done indirectly. As you may not levy taxes to build a church, no more may you levy taxes to build a schoolhouse and then lease it for a church. Nor is it an answer to say that its use for school purposes is not interfered with, and that the use for the other purposes works little, perhaps no immediately perceptible, injury to the building, and results in the receipt of immediate pecuniary benefit."

As can be seen, the Kansas court rested its decision upon the proposition that any use of school property for other than school purposes breaches the trust imposed upon the board of trustees, regardless of the benefits to the school district

resulting from such use and regardless of the absence of interference with the activities of the school. An examination of the decisions following and in accord with the Spencer case reveals that each is based upon a proposition akin to that enunciated by the Kansas court. See 5 A.L.R. 889. Since the premise upon which these decisions are predicated is directly contrary to the position taken by our courts in Royse Independent School District v. Reinhardt, supra, we feel that decisions resulting from such premise can neither influence nor control the courts of this State.

A majority of the courts in other jurisdictions have rejected the rationale of the Spencer case and, despite constitutional provisions similar to those in Texas, have permitted the leasing of school property to sectarian organizations. Thus the Supreme Court of Nebraska in State ex rel. Gilbert v. Dilley, 95 Neb. 527, 145 N. W. 999, held that the occasional use of a schoolhouse for Sunday school and religious meetings did not constitute the schoolhouse a place of worship within the meaning of the constitutional provisions prohibiting compulsory attendance on places of worship and taxation for the maintenance thereof. A like holding with respect to a similar constitutional provision was made by the Supreme Court of Iowa, Davis v. Boget, 50 Iowa 11.

Most nearly corresponding to the instant situation is the case of Nichols v. School Directors, 93 Ill. 61, 34 Am. Rep. 160. In this case the granting of the temporary use of a schoolhouse, when not used for school purposes, for religious meetings and Sunday schools was challenged as being in contravention of constitutional provisions which required (a) that no person should be required to support a place of worship against his consent, and that no preference should be given by law to any religious denomination or mode of worship, (b) that no school district should make an appropriation in aid of any church, or for sectarian purposes, and (c) that all school property should faithfully be applied to the object for which it was donated or granted. With respect to plaintiff's contentions the court said:

"It seems to us a very strained interpretation to attempt to bring the present case within the reach of either one of the above constitutional provisions.

Honorable T. M. Trimble, Page 8

The latter one relates to the subject of a gift or grant, which this schoolhouse is not shown to be, and if it were, it is not perceived wherein an incidental use of the house for the holding of religious meetings, not in any way in interference with school purposes, would in any reasonable sense be inconsistent with its faithful application to the object of the gift or grant. The second provision respects the making of an appropriation or payment from some public fund in aid of any church or sectarian purpose, and it cannot be claimed that this contemplated use of the schoolhouse is such. In what manner, from the holding of religious meetings in the schoolhouse, complainant is going to be compelled to aid in furnishing a house of worship and for holding religious meetings, as he complains in his bill, he does not show . . . . The thing contemplated by the constitutional provision first above named was a prohibition upon the legislature to pass any law by which a person should be compelled, without his consent, to contribute to the support of any ministry or place of worship. Such a matter as the subject of complaint here, we do not regard as within its purview. Religion and religious worship are not so placed under the ban of the Constitution that they may not be allowed to become the recipient of any incidental benefit whatsoever from the public bodies or authorities of the state. That instrument itself contains a provision authorizing the legislature to exempt property used for religious purposes from taxation; and thereby, the same as is complained of here, there might be indirectly imposed upon the taxpayer the burden of increased taxation, and in that manner the indirect supporting of places of worship. . . . ."

The resemblance between the constitutional provisions involved in this case and those here under consideration is obvious.

Honorable T. M. Trimble, Page 9

Since our constitutional provisions are couched largely in terms of "appropriations" for religious sects or schools, it becomes necessary to determine the meaning to be ascribed to this term. The decision in Royse Independent School District v. Reinhardt, supra, necessarily decided that a lease of school property based on a valuable consideration and made for non-school purposes is not an "appropriation" of the available school fund for non-school purposes, else the lease would have fallen under the ban contained in Section 5 of Article VII. Since the prohibition with respect to sectarian schools contained in Section 5 also is couched in terms of "appropriation," and since neither of the prohibitions contained in said Section can be given more or less force than the other in as much as each employs the same language, we feel constrained to hold that a lease based on a valuable consideration and made to allow the holding of a sectarian school in a school building is not violative of Section 5 of Article VII. Section 7 of Article I forbids "appropriations" of State property for religious purposes. In view of the Reinhardt case and in accordance with common usage, we feel that the term "appropriation" as used in this Section was in no way intended to comprehend a transaction in which the school district receives a quid pro quo in return for the use of its property. It could scarcely be contended that an outright sale of unused school property to a religious sect would constitute an "appropriation" of school or State property; no more, we feel, can it be said that a lease of such property is an appropriation when it is based upon reasonable consideration.

One final provision deserves attention. Section 6 of Article I prohibits compelling any person to support "any place of worship." Under the above authorities, we feel that the contemplated use of the school building can in no way transform it into a "place of worship." Moreover, even if we should concede that such use can effect this transformation, we feel that no taxpayer can be said to "support" a place used for purposes of worship when recompense for such use is received by the school district. See Church v. Bullock, supra.

Consequently, you are respectfully advised that the board of trustees may, for a reasonable consideration, lease school property for sectarian purposes provided such lease in no way interferes with the use of such property for school purposes.

Honorable T. M. Trimble, Page 10

It will be noticed that some of the above cited authorities from other jurisdictions hold directly and by inference that a school board may also permit the use of school property by sectarian and other groups when no rent or other consideration is received, at least when such use of the property is temporary and infrequent. Also, in Royse Independent School District v. Reinhardt, supra, the Court summarized and cited without disapproval various cases holding that municipal property may be used "either gratuitously or for a compensation for private purposes." However, it is noteworthy that the opinion in the Reinhardt case placed much stress upon the fact that the lease there in question did reserve a valuable consideration to the district. In Love v. City of Dallas, supra, the Supreme Court also stressed the importance of consideration in holding that since the property of a district is held in trust for the residents of that district, the Legislature can force such property to be used for the residents of another district only when just compensation is received. Thus the Court said at pp. 29-30:

> " . . . . it is not debatable that the Legislature cannot compel one district to use its funds and properties for the education of the scholastics from another district, without just compensation. However, in view of the long operation of the transfer statutes, we believe that where a school district has facilities and teachers in excess of those necessary for its own scholastics, the state has the power to require it to accept transfers from another district, but only upon the payment of reasonable compensation therefor." (Emphasis added)

In our opinion it is the receipt of consideration which prevents leases of the type under discussion from constituting "appropriations" of school property for non-school uses, and we feel that such leases are "appropriations" within the constitutional meaning of this term if reasonable consideration is not received by the district. It may well be true that no legal remedy will attach to temporary and infrequent gratuitous uses of the property for non-school purposes. An injunction might be precluded by inability to prove that such use is likely to continue, while an action for damages might be comprehended by the principle of

Honorable T. M. Trimble, Page 11

de minimus or might be made impossible by the inability of any particular plaintiff to demonstrate that he was damaged by such use. See Spencer v. Joint School District, supra; Nichols v. School Directors, supra. But while the absence of a legal remedy to prevent or to atone for the doing of a given act may make for immunity of the actor it cannot create authority. Consequently, you are respectfully advised that a board of trustees is not authorized to permit the use of school property for sectarian purposes unless reasonable consideration is received for such use.

We do not here attempt to define or to delimit the "reasonable consideration" which is necessary in leases of this kind. A determination of the nature and extent of such consideration lies, we feel, within the discretionary powers of the board of trustees, and, as in the case of other contracts made by the board, we feel that its judgment in this respect will not be disturbed by the courts unless it is shown that such discretion has been abused.

Two arguments have been advanced against the conclusions herein expressed: It is argued (a) that in districts in which a majority of the residents belong to a given religious sect the property may be leased exclusively to that sect and denied to minority groups within the district, and (b) that the board of trustees may lease the property for an inadequate or fictitious consideration and thus do by indirection that which they cannot do directly. The answer to these contentions is brief: We cannot assume that the board of trustees will be unfaithful to their trust or will act in a discriminatory fashion in the manner above described, nor can we predicate rules of conduct upon such an assumption; rather we must assume that members of the board, as public officials, will exercise their discretion and perform their duties honestly and impartially. Moreover, in the event that the board should abuse its discretion, a statutory appeal (Article 2656) to the State Superintendent of Public Instruction, and thence to the State Board of Education, lies as a matter of right from the rulings and decisions of the board, and, if an individual or group of individuals feel aggrieved even after such appeals, the courts remain ready to afford an appropriate remedy. South San Antonio Independent School

District v. Martine, supra. As in other instances, the law with respect to the problem under consideration does not attempt to make impossible an abuse of discretion by administrative officials; rather it attempts to furnish adequate machinery for the correction of any such abuses.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By R. Dean Moorhead

R. Dean Moorhead
Assistant

APPROVED JUL 14, 1943

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

RDM:ff

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE